**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | ***ELECTRONICALLY FILED*** |
| and | ) | |
| COMMONWEALTH OF KENTUCKY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. _____ |
| | ) | |
| LEXINGTON-FAYETTE URBAN | ) | |
| COUNTY GOVERNMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

The United States of America, by authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), and the Commonwealth of Kentucky, file this Complaint and allege as follows:

**NATURE OF ACTION**

1.  This is a civil action for injunctive relief and penalties brought under Section 309 of the Clean Water Act ("the Act"), 33 U.S.C. § 1319, against Defendant Lexington-Fayette Urban County Government ("LFUCG") for discharges of pollutants in violation of Section 301 of the Act, 33 U.S.C. § 1311, including discharges of pollutants from unpermitted point sources, and for violations of other conditions established in National Pollutant Discharge Elimination System ("NPDES") permits issued to LFUCG by the Kentucky Environmental & Public Protection Cabinet ("EPPC"), pursuant to its EPA-approved permit program under Section 402

of the Act, 33 U.S.C. § 1342. This case involves violations of LFUCG's municipal separate storm sewer system (MS4) NPDES permit and violations of its NPDES permits for LFUCG's publicly-owned treatment works (POTWs) for its sanitary sewer system.

2. The Commonwealth of Kentucky ("Kentucky") joins this action as a party pursuant to Section 309(e) of the Act, 33 U.S.C. § 1319(e), alleging certain violations of the CWA and Kentucky Revised Statutes ("KRS") Chapter 224. The Commonwealth is authorized to administer the NPDES program of the Act pursuant to KRS 224.16-050 and issued the permits referred to in this Complaint.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to Section 309(b) of the Act, 33 U.S.C. §§ 1319(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

4. The United States has authority to bring this action on behalf of the Administrator of EPA ("Administrator") under Section 506 of the Act, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

5. Venue is proper in the Eastern District of Kentucky pursuant to 28 U.S.C. §§ 1391(b) and 1395, because it is the judicial district in which LFUCG is located and in which the alleged violations occurred.

6. Notice of the commencement of this action has been given to Kentucky in accordance with 33 U.S.C. § 1319(b).

## DEFENDANT LFUCG

7. Defendant LFUCG is a municipal entity created under Kentucky law under Kentucky Revised Statute (KRS) Chapter 67A. In 1974, the governments of the City of

Lexington, Kentucky, and Fayette County, Kentucky merged, after the voters approved the charter merging the two governments in an election on November 6, 1973. LFUCG owns and operates a medium-sized municipal separate storm sewer system (MS4), and two large publicly-owned wastewater treatment plants (WWTPs) along with a sanitary sewer system, for which it has NPDES permits issued under Section 402(b) of the Act, 33 U.S.C. § 1342(b), and operates a small WWTP. Such facilities are located throughout the Urban County and the surrounding area.

## CLEAN WATER ACT REQUIREMENTS

8. Section 301(a) of the Act, 33 U.S.C. § 1311(a), prohibits the discharge of a pollutant by any person, except as authorized by and in compliance with certain enumerated sections of the Act, including Section 402, 33 U.S.C. § 1342.

9. Section 402(a) of the Act, 33 U.S.C. § 1342(a), provides that the permit-issuing authority may issue an NPDES permit which authorizes the discharge of any pollutant, but only in compliance with the applicable requirements of Section 301 of the Act, 33 U.S.C. § 1311, and such other conditions as the Administrator determines are necessary to carry out the provisions of the Act.

10. Section 402(b) of the Act, 33 U.S.C. § 1342(b), provides that EPA may approve a state NPDES permitting program within its jurisdiction. Kentucky, through the EPPC, is authorized to issue NPDES permits in Kentucky, in accordance with Kentucky's environmental protection statute, KRS Chapter 224.16-050 and 224.10-100.

11. Section 402(p)(4)(B) of the CWA, 33 U.S.C. §1342(p)(4)(B), sets out a schedule for the issuance of NPDES permits for storm water discharges from municipal separate storm

sewer systems serving a population of 100,000 or more but less than 250,000.

12. "Municipal separate storm sewer" means, *inter alia*, "a conveyance or system of conveyances (including roads with drainage systems, municipal streets, catch basins, curbs, gutters, ditches, man-made channels, or storm drains) . . . [o]wned or operated by a . . . county. . . or other public body (created by or pursuant to State law) . . . [and] [d]esigned or used for collecting or conveying storm water . . . ." 40 C.F.R. § 122.26(b)(8), 401 KAR 5:002 §1(188).

13. 40 C.F.R. § 122.26(b)(7), 401 KAR 5:002 §1(188), (177), defines "medium municipal separate storm sewer system" to mean "all municipal separate storm sewers . . . located in an incorporated place with a population of 100,000 or more but less than 250,000, as determined by the latest Decennial Census by the Bureau of Census."

14. Operators applying for permits for discharges from medium municipal separate storm sewer systems must submit a proposed storm water management program. 40 C.F.R. § 122.26(d)(2)(iv), 401 KAR 5:060 §12(3)(b)4.

15. The Clean Water Act's definition of "pollutant" in Section 502(6) of the Act specifically identifies "sewage" as a pollutant. 33 U.S.C. § 1362(6).

16. "Illicit discharge" includes any discharge to a municipal separate storm sewer that is not composed entirely of storm water and that is not covered by an NPDES permit. 40 C.F.R. § 122.26(b)(2), 401 KAR 5:002 §1(124).

17. "Treatment works" means "any devices and systems used in the storage, treatment recycling, and reclamation of municipal sewage or industrial wastes of a liquid nature . . . including intercepting sewers, outfall sewers, sewage collection systems, pumping, power, and other equipment . . . ." 33 U.S.C. § 1292(2)(a).

18. Section 309(b) of the Act, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief, including a permanent or temporary injunction, when any person is in violation of, <u>inter alia</u>, Section 301 of the Act, 33 U.S.C. § 1311, or any permit condition or limitation in an NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342.

19. Section 309(d) of the Act, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the Act, 33 U.S.C. § 1311, or violates any permit condition or limitation in a NPDES permit issued pursuant to Section 402 of the Act, 33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $27,500 per day for each violation which takes place after January 30, 1997, but before March 15, 2004; and $32,500 per day for each violation which takes place on or after March 15, 2004, pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134).

## **GENERAL ALLEGATIONS**

20. At all times relevant herein, LFUCG was a "municipality" and a "person" within the meaning of Section 502(4) and (5) of the Act, 33 U.S.C. § 1362(4),(5).

21. LFUCG owns and operates a municipal separate storm sewer system within the meaning of Section 402(p) of the CWA, 33 U.S.C. § 1342(p), and 40 C.F.R. § 122.26(b)(18), a medium municipal separate storm sewer system within the meaning of 40 C.F.R. § 122.26(b)(7), 401 KAR 5:002 §1(188), and a municipal separate storm sewer system serving a population of 100,000 or more but less than 250,000, within the meaning of Section 402(p)(2)(D) of the CWA, 401 KAR 5:002 §1(177).

22. At times relevant herein, LFUCG has "discharged" a "pollutant" from its municipal separate storm sewer system within the meaning of Sections 502(6) and (12) of the Act, 33 U.S.C. §§ 1362(6), (12) from "point sources" within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14), into "navigable waters" within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7).

23. On November 12, 1999, EPPC issued LFUCG NPDES Permit No. KYS000002 ("2000 MS4 Permit"), with an effective date of January 1, 2000. The MS4 permit authorized discharges from LFUCG's municipal separate storm sewer system, in accordance with certain specified conditions.

24. There are numerous illicit cross-connections between LFUCG's sewer collection system and its MS4, resulting in discharges of untreated sewage into navigable waters. For instance, there are at least four (4) cross-connections in the Town Branch watershed of the LFUCG system, in the Chevy Chase sub-basin.

25. At all times relevant herein, LFUCG has owned and operated two major WWTPs, and associated collection and transmissions systems, which receive and treat wastewater from residential, commercial, and industrial sources within the Urban County and surrounding areas. The collection and transmission systems for the WWTPs include, inter alia, gravity sewer lines, manholes, and pump stations.

26. Both the Town Branch and the West Hickman WWTPs, and their associated collection and transmission systems, are "treatment works" within the meaning of Section 212(2) of the Act, 33 U.S.C. § 1292(2).

27. At times relevant herein, LFUCG has "discharged" "pollutants" from its treatment

works within the meaning of Sections 502(6) and (12) of the Act, 33 U.S.C. §§ 1362(6), (12) from "point sources" within the meaning of Section 502(14) of the Act, 33 U.S.C. § 1362(14), 401 KAR 5:002§1, into navigable waters within the meaning of Section 502(7) of the Act, 33 U.S.C. § 1362(7), and 40 C.F.R. § 122.2, including Town Branch, and West Hickman Creek, and their systems of tributaries and river basins.

28. Town Branch has been designated by Kentucky, in accordance with 401 KAR 5:026, Section 5(2), for the use of warm water aquatic habitat, and primary and secondary contact recreation. Town Branch is listed in the Commonwealth of Kentucky's Section 303(d) list, which identifies impaired waterways pursuant to Section 303(d) of the Act, 33 U.S.C. § 1313(d), specifically, for nutrients, organic enrichment/low dissolved oxygen, and pathogens.

29. West Hickman Creek is listed on Kentucky's Section 303(d) list of impaired waters, portions specifically, for nutrients, pathogens and siltation.

30. Pursuant to Section 402(a) of the Act, 33 U.S.C. § 1342(a), in 1997 EPPC issued NPDES Permit No. KY0021504 for the West Hickman Creek WWTP (and EPPC has since reissued the permit), and in 1998 EPPC issued NPDES Permit No. KY0021491 for the Town Branch WWTP, (collectively, the "POTW NPDES permits").

31. At all relevant times herein, LFUCG's NPDES permit for the West Hickman Creek WWTP has authorized LFUCG to discharge pollutants from specified point sources within its WWTP to West Hickman Creek, subject to certain limitations and conditions set forth in the NPDES permit.

32. At all relevant times herein, LFUCG's NPDES permit for the Town Branch WWTP has authorized LFUCG to discharge pollutants from specified point sources within its

WWTP to Town Branch, subject to certain limitations and conditions set forth in the NPDES permit.

33.     The POTW NPDES permits established certain limitations on, <u>inter</u> <u>alia</u>, the mass and concentration of pollutants LFUCG may discharge from its WWTPs during a given period. *See* POTW NPDES Permits, Part I.  Those permits also require LFUCG to monitor its discharges and submit periodic Discharge Monitoring Reports to EPPC.  *See* POTW NPDES Permits, Part III, Page III-1; 401 KAR 5:065, Section 1(10), (12).

34.     The POTW NPDES permits prohibit bypasses that are not "essential maintenance to assure efficient operation."  *See* POTW NPDES Permits, Part II, Page II-1; 401 KAR 5:065, Section 1(13).

## FIRST CLAIM FOR RELIEF
## MS4 VIOLATIONS

35.     Paragraphs 1 through 34 are realleged and incorporated herein by reference.

36.     CWA Section 402(p)(3)(B), 33 U.S.C. § 1342(p)(3)(B), requires that all permits for discharges from municipal storm sewers shall require controls to reduce the discharge of pollutants to the maximum extent practicable, including management practices, control techniques and system, design and engineering methods, and such other provisions as the Administrator or the State determines appropriate for the control of such pollutants.

37.     40 C.F.R. Section 122.26(d)(2)(iv) and 401 KAR 5:060 §12(3)(b)4, require that applicants for MS4 Permits propose a management program designed to reduce the discharge of pollutants to the maximum extent practicable.  Section 122.26(d)(2)(iv) and 401 KAR 5:002 §12(3)(b)4, further provide that proposed programs will be considered by the permitting authority when developing permit conditions to reduce pollutants in discharges to the maximum

extent practicable. EPPC has incorporated LFUCG's proposed program as a condition of its 2000 MS4 Permit and LFUCG's prior MS4 permits.

38. LFUCG has failed to fully implement its proposed program, and LFUCG has failed to implement controls adequate to reduce the discharge of pollutants from its municipal storm sewers to the maximum extent practicable.

39. The 2000 MS4 Permit requires LFUCG to comply with "conditions set forth in this document [the 2000 MS4 Permit], contents of the application submittals and annual reports, 401 KAR Chapter 5, and other requirements in 40 C.F.R. 122.26 rules and regulations." *See* 2000 MS4 Permit, at p.1. LFUCG's application submittals include a description of its Storm Water Management Program ("SWMP"), which sets forth the activities LFUCG committed to perform to reduce pollutants in its MS4 discharges.

40. Section II of the 2000 Permit, under the heading "Monitoring Requirements," requires that: "Representative data collection for the term of the permit shall be used to provide estimates for each major outfall of the seasonal pollutant load and event mean concentration for any constituent detected as stipulated in 122.26(d)(2)(iii)(A)(3)."

41. Section III of the 2000 MS4 Permit, under the heading "Stormwater Management Program," requires that: "Illicit discharges to the municipal separate storm sewer system are prohibited. On-going field screening shall be conducted as an effective means of control."

42. Section III of the 2000 MS4 Permit, under the heading "Stormwater Management Program," further requires that: "Pollutant sources from municipal landfills, hazardous waste treatment, disposal, and recovery facilities and other industrial facilities shall be monitored and controlled."

43. Section IV of the 2000 MS4 Permit, under the heading "Fiscal Requirements," requires that: "Funding shall be established and maintained to ensure the accomplishment of the activities designated in 122.26(d)(2)(iii) & (iv)."

44. The MS4 permit requires LFUCG at all times to "properly operate and maintain all facilities and systems of treatment and control and related appurtenances which are installed or used by the permittee to achieve compliance with the conditions" of its NPDES permit. *See* 40 C.F.R. Section 122.41(e); 401 KAR 5:065, Section 1(5).

45. LFUCG submitted and EPPC accepted LFUCG's 1998 Annual Report as its MS4 Permit renewal application. LFUCG's application submittals, which have been incorporated as conditions of the 2000 MS4 Permit, include the following commitments by LFUCG:

- In Section 3A of the application LFUCG committed to conduct dry weather screening of its major outfalls at a rate of 250 every two years (125 per year).

- In Section 4A, 3.3 of the application LFUCG committed to conduct inspections of certain industrial facilities on an annual basis.

- In Section 4A, 3.4.3 of the application LFUCG committed to conduct daily inspections of subdivision construction sites.

- In Section 4A, 3.4.4 of the application LFUCG committed to conduct inspections of commercial construction sites at a frequency ranging from twice per week to once per quarter, depending on the priority characterization of the construction site in terms of size and significance of the facility/improvements.

46. LFUCG failed to conduct representative data collection to be used to provide estimates for each major outfall of the seasonal pollutant load and event mean concentration for any constituent detected as stipulated in 122.26(d)(2)(iii)(A)(3), 401 KAR 5:060 §12(b)3.a.iii, as required by Section II of the 2000 MS4 Permit.

47. The cross-connections between LFUCG's sanitary sewers and its MS4 system

have resulted in illicit discharges, in violation of Section III of the 2000 MS4 Permit, which provides that: "Illicit discharges to the municipal separate storm sewer system are prohibited."

48.   LFUCG has failed to conduct on-going field screening to identify and control illicit discharges, as required by Section III of the 2000 MS4 permit.

49.   LFUCG has failed to monitor municipal landfills, hazardous waste treatment, disposal, and recovery facilities and other industrial facilities, as required by Section III of the 2000 MS4 Permit.

50.   LFUCG has failed to conduct dry weather screening of its major outfalls at a rate of 250 every two years (125 per year), as required by the 2000 MS4 Permit pursuant to LFUCG's commitment in Section 3A of the application.

51.   LFUCG has failed to conduct inspections of certain industrial facilities on an annual basis, as required in the 2000 MS4 permit pursuant to LFUCG's commitment in Section 4A, 3.3 of the application.

52.   LFUCG has failed to establish and maintain funding to ensure the accomplishment of the activities designated in 40 C.F.R. Section 122.26(d)(2)(iii) and (iv), and 401 KAR 5:060 §12(3)(b)3 and 4, as required by Section IV of the 2000 MS4 Permit.  In its Annual Reports filed pursuant to and during the term of the 2000 MS4 Permit, LFUCG has cited a lack of adequate funding as the reason for various failures to comply with requirements of the 2000 MS4 Permit.

53.   Each of LFUCG's failures to comply with the 2000 MS4 Permit's requirements as described above violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a), and/or the 2000 MS4 Permit.

54. Unless restrained by an order of the Court, LFUCG will continue to fail to fully implement the programs and to provide adequate finances and support for the programs in its SWMP, and will continue to discharge pollutants from its MS4 in violation of the CWA.

55. Kentucky adopts the United States' allegations in its first claim for relief and asserts these violations are also violations of KRS Chapter 224.

## SECOND CLAIM FOR RELIEF
## UNPERMITTED DISCHARGES

56. Paragraphs 1 through 55 are realleged and incorporated herein by reference.

57. On numerous occasions, since at least March 2000, LFUCG experienced sanitary sewer overflows ("SSOs"), which are discharges of untreated wastewater containing pollutants from point sources within its collection and transmission systems, that were not identified in its NPDES permit as authorized outfalls. Some of these SSOs are caused by blockages, and surcharged manholes, as well as discharges from unauthorized overflow points in LFUCG's collection system, including pump stations, and numerous engineered illicit cross-connections of sanitary sewers to the MS4, which also constitute unpermitted discharges of sewage. None of these discharges was permitted or otherwise authorized by the Act.

58. Additionally, LFUCG has not pursued industrial stormwater permit coverage for its municipally operated industrial activities; i.e., fleet maintenance area, as required by the Act.

59. Each day of each unpermitted discharge by LFUCG which reaches waters of the United States is a separate violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).

60. LFUCG continues to violate the Act by discharging wastewater containing pollutants without a permit from point sources, including the collection and transmission systems, that are not identified in its NPDES permit as authorized outfalls. Unless restrained by

an order of the Court, LFUCG will continue to discharge pollutants from point sources without a permit or other authorization in violation of the Act.

61. Kentucky adopts the United States' allegations in its second claim for relief and asserts these violations are also violations of KRS Chapter 224.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF PROHIBITION AGAINST BYPASS

62. Paragraphs 1 through 61 are realleged and incorporated herein by reference.

63. On numerous occasions since at least February 2000, LFUCG has allowed bypasses at the Town Branch WWTP. These bypasses are prohibited under Part II of LFUCG's NPDES permit because they are not "essential maintenance to assure efficient operation." *See* NPDES Permit, Part II, Page II-1; 401 KAR 5:065, Section 1(13).

64. Each day of each violation of bypass prohibition of its NPDES permit is a separate violation.

65. LFUCG continues to violate the bypass prohibition of its NPDES permit. Unless restrained by an order of the Court, LFUCG will continue to violate the bypass prohibition of its NPDES permit.

66. Kentucky adopts the United States' allegations in its third claim for relief and asserts these violations are also violations of KRS Chapter 224.

### FOURTH CLAIM FOR RELIEF
### MANAGEMENT, OPERATION AND MAINTENANCE VIOLATIONS

67. Paragraphs 1 through 66 are realleged and incorporated herein by reference.

68. Many of the SSOs and bypasses alleged in the previous two claims, as well as SSOs that did not reach waters of the United States, resulted, in whole or in part, from LFUCG's

failure to properly manage, operate and maintain its treatment works, including the plants and its collection and treatment systems, and the failure to have on-line and in operation those systems of treatment and control necessary to achieve compliance with the respective NPDES permit. Proper management, operation and maintenance would have ensured that LFUCG could have transported sewage and pollutants through its collection, transmission and treatment systems without SSOs or bypasses.

69. LFUCG violated the operation and maintenance ("O&M") provisions of its NPDES permit on each occasion of an SSO or bypass. *See* 401 KAR 5:065, Section 1(5), which is incorporated by reference as a standard permit condition in Part II of NPDES Permits issued by EPPC for the Town Branch and West Hickman WWTPs.

70. Each day of each violation of O&M provisions of the NPDES permit is a separate violation.

71. LFUCG continues to violate the O&M provisions of the NPDES permit. Unless restrained by an order of the Court, LFUCG will continue to violate the O&M provisions of the NPDES permit.

72. Kentucky adopts the United States' allegations in its fourth claim for relief and asserts these violations are also violations of KRS Chapter 224.

### FIFTH CLAIM FOR RELIEF
### FAILURE TO COMPLY WITH PERMIT EFFLUENT LIMITATIONS

73. Paragraphs 1 through 72 are realleged and incorporated herein by reference

74. On several occasions from at least April 2002 through the date of this Complaint, LFUCG allowed discharges of effluent from permitted outfalls that did not comply with the effluent limitations set for its permits issued to LFUCG for its WWTPs, including, at the Town

Branch POTW, one dissolved oxygen violation during September 2002 which did not meet the minimum permit limit for one day, and two toxicity violations: one during the April to June 2002 period for 15 days, and one during the January to March 2004 quarterly monitoring period for 7 days.

75. Each day of each violation of effluent limitation of the NPDES permit is a separate violation of Sections 301(a) and 402 of the Act, 33 U.S.C. §§ 1311(a) and 1342.

76. Kentucky adopts the United States' allegations in its fifth claim for relief and asserts these violations are also violations of KRS Chapter 224.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, the United States of America and the Commonwealth of Kentucky, request that the Court enter judgment on their behalf as follows:

A. Pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), order LFUCG to undertake a program to achieve permanent and consistent compliance with all terms and conditions of its NPDES permits, the Clean Water Act, and the regulations promulgated thereunder for its treatment works, including the plants and its collection and transmission systems, and for its MS4;

B. Pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), assess civil penalties against LFUCG of up to $27,500 per day for each day of violation that occurred prior to March 15, 2004, and up to $32,500 per day for each day of violation that occurred on or after March 15, 2004;

C. Pursuant to KRS Chapter 224, assess civil penalties against LFUCG of up to $25,000 per day for each day of violation;

D.	Award the Plaintiffs their costs in the action; and

E.	Grant the Plaintiffs such other relief as the Court deems appropriate.

    Respectfully submitted,

    SUE ELLEN WOOLDRIDGE
    Assistant Attorney General
    Environment and Natural Resources Division
    United States Department of Justice

    S/ Andrew Sparks by permission for
    VALERIE K. MANN
    Trial Attorney
    Environmental Enforcement Section
    Environment and Natural Resources Division
    United States Department of Justice
    P.O. Box 7611
    Washington, D.C.  20044
    (202) 616-8756 - telephone

    AMUL R. THAPAR
    UNITED STATES ATTORNEY

    S/ Andrew Sparks
    ANDREW SPARKS
    Assistant United States Attorney
    110 West Vine Street, Suite 400
    Lexington KY 40507-1671
    (859) 233-2661 - telephone
    Andrew.Sparks@usdoj.gov

Of Counsel:	Paul Schwartz
    U.S. EPA Region 4
    61 Forsyth Street, S.W.
    Atlanta, GA 30303-8960
    telephone: 404/562- 9576

    **ATTORNEYS FOR**
    **UNITED STATES OF AMERICA**

    Respectfully submitted,

    COMMONWEALTH OF KENTUCKY
    ENVIRONMENTAL AND PUBLIC

PROTECTION CABINET

<u>S/ Andrew Sparks by permission for</u>
BRENDA GAIL LOWE
SHARON R. VRIESENGA
Office of Legal Services
Fifth Floor, Capital Plaza Tower
Frankfort, KY 40601
(502) 564-5576 - telephone
(502) 564-6131 - facsimile

**ATTORNEYS FOR COMMONWEALTH**