UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 06-386-KSF

THE UNITED STATES OF AMERICA, *et al*                                            PLAINTIFFS

WALTER GAFFIELD, *et al*                                       INTERVENING PLAINTIFFS

v.                                   **OPINION & ORDER**

LEXINGTON-FAYETTE URBAN
COUNTY GOVERNMENT                                                        DEFENDANT

\* \* \* \* \* \* \* \* \*

This matter is currently before the Court upon the motion [DE #78] of the Intervening Plaintiffs, twenty-nine individuals that are residing or operating a business in Lexington, Kentucky, pursuant to Rule 54(d) of the Federal Rules of Civil Procedure, for their costs and attorney fees incurred in this action. Specifically, the Intervening Plaintiffs seek $177,300 in attorney fees and $6,025.77 in costs as a result of their involvement in this action filed under the Clean Water Act, 33 U.S.C. §1300 *et seq.*, which ultimately resulted in entry of a Consent Decree. This motion has been fully briefed and is ripe for review.

**I.    THE CLEAN WATER ACT**

Congress enacted the Clean Water Act, 33 U.S.C. § 1300 *et seq*. (the "CWA" or the "Act"), in 1972, with the goal "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). In order to achieve this goal, the CWA prohibits discharge of pollutants, including raw sewage overflows, into waters, *see* 33 U.S.C. § 1311(a), unless authorized by a National Pollutant Discharge Elimination System permit. *See* 33 U.S.C. § 1342. The CWA allows government agencies to bring administrative enforcement or judicial actions

seeking injunctive relief and/or monetary penalties. 33 U.S.C. § 1319(a)(3), (b), (g). The Act also allows citizen suits in limited circumstances. *Gwaltney of Smithfield, Ltd v. Chesapeake Bay Foundation, Inc.* 484 U.S. 49 (1987)(holding that jurisdiction is established "when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation"). There are limitations on citizen suits, however. For example, in any citizen suit, notice of the precise alleged violation must be given at least sixty days before any action is filed. 33 U.S.C. § 1365(b)(1)(A); *see also Ailor v. City of Maynardville*, 368 F.3d 587, 591 (6th Cir. 2004). Failure to provide such notice requires dismissal for lack of jurisdiction. *Hallstrom v. Tillamook County*, 493 U.S. 20 (1989). As noted by the Supreme Court, requiring citizens to provide specific notice of the alleged violation serves two purposes:

> First, notice allows Government agencies to take responsibility for enforcing environmental regulations, thus obviating the need for citizen suits . . . Second, notice gives the alleged violator an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.

*Id*. at 29 (internal citations omitted).

Citizens, however, may not sue if either the EPA or the relevant state agency has commenced and is diligently prosecuting a civil or criminal action in court to compel compliance with a relevant standard. Under § 1319(g)(6), administrative enforcement also will preclude a citizen suit for penalties with respect to violations for which governmental agencies have either commenced and are diligently prosecuting or have issued a final order not subject to further judicial review and the alleged violator has paid a penalty. 33 U.S.C. § 1319(g)(6). Nevertheless, § 1319 gives citizens broad rights of participation in administrative enforcement actions, notwithstanding the fact that they may not be deemed "parties" in the proceedings. Finally, in addition to injunctive relief and

monetary penalties, private party plaintiffs may seek an award of attorneys fees and costs if they "substantially prevail" in the litigation. 33 U.S.C. § 1365(d).

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2004, the United States Environmental Protection Agency ("EPA") began investigating the sanitary sewer system and municipal separate storm sewer ("MS4")system owned and operated by the Lexington-Fayette Urban County Government ("LFUCG") to determine the LFUCG's compliance with the CWA . *See* Affidavit of Charles H. Martin, P.E., Director, LFUCG Division of Water Quality, DE #79-1. As a result of its system-wide inspections, the EPA sent follow-up administrative information demands to LFUCG in 2005 pursuant to Section 308 of the CWA, 33 U.S.C. § 1318. The LFUCG responded, and the EPA then sent notice of a show cause hearing and a supplemental CWA Section 308 request to LFUCG. According to the notice, the EPA indicated that it had "determined that the LFUCG has violated its Kentucky Pollutant Discharge Elimination System ("KPDES") permit" for discharges from the MS4 due to sanitary sewer overflows. A show cause hearing was held on March 24, 2006, at which time the LFUCG was allowed to respond to the EPA's determination of violation. *Id*.

Then, by letter dated August 30, 2006, the United States Department of Justice ("DOJ") provided notice to legal counsel for LFUCG of its proposed commencement of a civil action against LFUCG on behalf of the United States for alleged CWA violations associated with the MS4, sanitary sewer overflows, and discharges from the permitted wastewater treatment plants. The letter further advised the LFUCG that DOJ was preparing to bring a civil action seeking injunctive relief and civil penalties through a "proposed complaint" and provided LFUCG an opportunity to discuss settlement of the alleged violations alleged by EPA. LFUCG responded that it intended to continue discussions

with the EPA and the Kentucky Environmental and Public Protection Cabinet ("KYEPPC," now known as the Kentucky Energy and Environment Cabinet) to negotiate a resolution of the federal and state governments' CWA claims. *Id*.

Meanwhile, on September 26, 2006 and October 4, 2006, the Fayette County Neighborhood Council ("FCNC") and certain individuals served the required parties with a sixty day written notice of their intent to file a lawsuit against LFUCG if the problems with the city's sanitary and storm-water system were not corrected within that period [DE #7-3]. They alleged that since 1998, the FCNC had tried to work with Lexington, without success, to resolve LFUCG's CWA violations. By letter dated October 19, 2006, counsel for FCNC reported that an agreement had been reached with the LFUCG's Mayor's office regarding FCNC's participation in the "ongoing negotiations." *See* Martin Affidavit, DE #79-1. According to the letter, "FCNC has agreed to . . . provide assistance and support to LFUCG during the negotiation process." *Id*. The FCNC was then allowed by LFUCG to participate in initial settlement discussions with EPA and KYEPPC regarding the governments' CWA lawsuit.

However, on May 4, 2007, the LFUCG disinvited FCNC from further negotiations due to a disagreement with the positions being taken by FCNC. FCNC then moved the Court for an order compelling LFUCG to allow it to continue participation in ongoing settlement discussions, which the Court denied [DE #8]. As the Court then explained, although the CWA permits citizens to intervene as of right in an EPA enforcement case, the right to intervene does not necessarily grant them an automatic seat at the negotiation table. The Court, however, did allow the FCNC and thirty-one individual residents of Fayette County to intervene in this action as intervenor plaintiffs pursuant to 33 U.S.C. § 1365(a)(1) and (b)(1)(B). Although the Court did not prohibit litigation activities by

4

FCNC (as LFUCG had requested), the Court did require the intervening plaintiffs to seek leave of Court prior to taking any action in furtherance of the litigation [DE #20]. Accordingly, on July 27, 2007, the Intervening Plaintiffs filed their Amended Intervening Complaint in this action [DE #21]. The Intervening Plaintiffs have not requested leave to conduct any litigation activities.

Although settlement negotiations continued, neither the FCNC or any individual intervening plaintiffs were part of these negotiations. A proposed Consent Decree was ultimately lodged with the Court on March 14, 2008 [DE #33]. In the proposed Consent Decree, LFUCG was required to bring its sanitary and storm sewer systems into compliance with the CWA at an estimated cost, according to the United States, of $250 million to $300 million. The proposed Consent Decree also required LFUCG to complete two Supplemental Environmental Projects (estimated to cost $1.23 million) and two Commonwealth environmental projects (estimated to cost $1.50 million) and to pay the United States a $425,000 civil penalty. Neither the FCNC nor the individual intervenors are signatories to the Consent Decree.

Pursuant to DOJ regulations, the Consent Decree was subject to public comment for a period of thirty days, during which time numerous individuals and entities filed comments on the proposed Consent Decree. The Intervening Plaintiffs also filed numerous comments, including the comments of a consultant retained by "FCNC" in opposition to various aspects of the Consent Decree [DE #46-3, Appendix A, Comment No. 1]. After the close of the comment period, the United States and Kentucky moved for entry of the Consent Decree on July 25, 2008 [DE #46].

On August 7, 2008, the Court, agreeing with many of the "commenters who were concerned that the penalties were too high and that the penalty money could be better applied to the work required under the Consent Decree," denied entry of the Consent Decree [DE #48]. A motion to

5

reconsider was filed on August 21, 2008 by the United States. Shortly thereafter, FCNC, through new legal counsel, filed a notice of voluntary dismissal of its claims in its Amended Intervening Complaint. This motion was granted, and FCNC was dismissed from the case [DE #65]. The twenty-nine remaining individual intervening plaintiffs, however, remained in the case and opposed the United States' motion for reconsideration [DE #55]. The Court ultimately denied the United States' motion for reconsideration on October 2, 2008[DE #58], and the United States appealed that Order to the United States Court of Appeals for the Sixth Circuit on October 6, 2008 [DE #61].

On appeal, the LFUCG took no position on the merits. The individual intervenors, however, continued to oppose entry of the Consent Decree, and filed a brief in support of the Court's rejection of the Consent Decree and a motion to dismiss the appeal. By its Opinion and Order of January 7, 2010, the Sixth Circuit ordered the matter remanded to this Court to either approve the Consent Decree, or to explain more fully, consistent with its Opinion, the exercise of its discretion in declining to approve the consent decree [DE #69]. The United States, Kentucky, and the individual intervenors then filed a joint motion to enter the Consent Decree [DE #76]. The Consent Decree, as originally proposed on March 14, 2008, was entered on January 13, 2011 and is now in effect [DE #77].

## III. ANALYSIS

While under the common law "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975), the CWA allows for attorney fees for citizen suits in Section 505(d), 33 U.S.C. § 1365(d). Specifically, this statute provides:

The court, in issuing any final order in any action brought pursuant to this section,

6

> may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d). Notably, the CWA leaves the award of attorneys fees and costs, if any, to the discretion of the court. *Id.; Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). As such, the courts have held that statutes awarding fees to the prevailing party in federal court are to be narrowly construed. *See e.g., United States v. Texas*, 507 U.S. 529, 534 (1993). Under the CWA, the primary responsibility for enforcing the CWA rests with the federal and state governments; if the primary actors are diligently prosecuting violations of the Act, then there is no need to provide incentives for private citizen action.

When determining whether to award attorneys fees and costs in this case, the Court first turns to the question of whether § 1365(d) authorizes fees to citizen intervenors in federal enforcement actions. The law on this issue is not clear. The Intervening Plaintiffs, relying on *Sierra Club v. Hamilton County Board of County Commissioners*, 504 F.3d 634 (6th Cir. 2007), contend that intervenors may recover attorney fees and costs under § 1365(d). In *Sierra Club*, the plaintiff sought attorneys fees and costs for its citizen suit against the county and municipality under the CWA. The plaintiff in *Sierra Club* filed its suit pursuant to the citizen suit provisions of 33 U.S.C. § 1365; however, it was subsequently consolidated into preexisting federal and state enforcement actions. The Sixth Circuit concluded that the *Sierra Club* plaintiff was a party by virtue of the fact that it filed an independent citizen suit: the plaintiff "did not merely intervene in the governments' actions; instead, its section 1365 citizen suit was consolidated with those other actions by order of the district court." *Id*. at 642. The Sixth Circuit went on to find that the plaintiff in *Sierra Club* was a prevailing party based in part on the fact that "without the Sierra Club's efforts, the more

7

comprehensive consent decree would not have come to fruition." *Id*. at 645. As a result, the court upheld the award of attorneys fees and costs. *Id*.

*Sierra Club* is clearly distinguishable from this case. While the FCNC representatives and some of the Intervening Plaintiffs participated in early negotiations with the permission of the LFUCG for a short period of time, they were excluded from the final ten months of negotiations relating to the Consent Decree because the LFUCG refused to agree with their demands. At the time the intervenors filed their motion to intervene, the federal and state governments were diligently prosecuting this action. The Court allowed the intervention under 33 U.S.C. § 1365(b)(1)(B), which permits citizens to intervene as a matter of right under certain circumstances as follows:

> No action may be commenced under subsection (a)(1) of this section . . . if the Administrator [of the EPA] or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right.

33 U.S.C. § 1365(b)(1)(B). This unconditional right to intervene, however, is not equivalent to an unconditional right to participate in the proceedings. Accordingly, while the intervenors were allowed to intervene in this action, leave of court was required before commencing any litigation activities. The intervenors had no involvement in the government negotiations at any time after they filed their intervening complaint.

In reaching its decision in *Sierra Club*, the Sixth Circuit distinguished the facts of that case from *United States v. Maine Department of Transportation*, 980 F.Supp.546 (D.Me. 1997), which involved "a plaintiff who merely intervened in a governmental civil enforcement action but never filed a citizen suit, as required by section 1365." Thus while the plaintiff in *Sierra Club* intervened in the government's action *and* filed a separate action pursuant to § 1365, the intervening plaintiffs

8

in this case and *Maine Department of Transportation* simply intervened in preexisting governmental actions. While it appears the intervenors in the present action were more actively involved in the negotiations than the intevenors in *Maine Department of Transprotation*, the Court cannot ignore the Sixth Circuit's distinction between filers of citizens suits under § 1365 and mere intervenors. Thus, because the Intervening Plaintiffs never filed a separate action pursuant to § 1365, they are not "parties" entitled to recover attorneys fees and costs under section §1365(d).

However, even if the Court were authorized to award attorneys fees and costs to the Intervening Plaintiffs as mere intervenors, they still have not established that they are a "prevailing or substantially prevailing" party. In order to prevail, a party must either "obtain an enforceable judgment . . . or comparable relief through a consent decree or settlement . . . [that] directly benefit[s the plaintiff] at the time of the judgment or settlement." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)(internal citations omitted). As the Supreme Court made clear in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598 (2001), a party must "receive at least some relief on the merits of his claim before he can be said to prevail," such that the relief "material[ly] alter[s] [] the legal relationship of the parties." *Id*. at 604. Additionally, the change in relationship must be "judicially sanctioned." *Id*. at 605.

Here, the individual intervenors did not receive any court-ordered relief or any enforceable rights as a result of the Consent Decree. Not only are they not named as parties to the Consent Decree, but they also opposed its entry, claiming during the comment period that it was unorthodox and insufficient in numerous respects. While the Intervening Plaintiffs filed comments to the proposed Consent Decree and participated in negotiations for a period of time, the Court ultimately entered the Consent Decree to which the Intervening Plaintiffs had objected. Thus, the Intervening

9

Plaintiffs cannot be considered prevailing or substantially prevailing parties.

Finally, even if the Court were to consider awarding attorneys fees and costs in this case, such an award would not be appropriate. The Intervening Plaintiffs have attempted to impute the status of the FCNC on the remaining individual intervenors in this case. However, it was the FCNC that was allowed to participate in the early negotiations with the LFUCG, not the individuals. It has been over two years since the FCNC voluntarily dismissed its claims against LFUCG. FCNC, then, cannot be a prevailing party because it was dismissed before a final Consent Decree was entered. *SeeRhodes v. Stewart*, 488 U.S. 1, 4 (1988)(plaintiffs that died or changed status before judgment was entered cannot be considered prevailing parties). The Intervening Plaintiffs should not be allowed to claim credit for the FCNC's involvement in this case.

## IV. CONCLUSION

For the reasons set forth above, the Court, being fully and sufficient advised, hereby **ORDERS** that the Intervening Plaintiffs' motion for attorneys fees and costs [DE # 78] is hereby **DENIED**.

This March 22, 2011.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge